# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BOB CODY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-08-439-SPS |
| | ) | |
| WILLIAM ARNETT, BLUE GRASS | ) | |
| STOCKYARDS EAST, L.L.C., doing | ) | |
| business as Mt. Sterling Barn, and DR. | ) | |
| DAWN BUSH, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER GRANTING MOTIONS TO DISMISS/TRANSFER AND TRANSFERRING CASE

The Plaintiff Bob Cody sued the Defendants William Arnett, Blue Grass Stockyards East, L.L.C. and Dr. Dawn Bush for misrepresentation in connection with cattle purchases he made from a livestock auction in Kentucky. The Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. *See* Docket Nos. 21, 35, 49. Arnett seeks transfer to the Eastern District of Kentucky pursuant to 28 U.S.C. § 1404(a) in the alternative. *See* Docket No. 50. For the reasons set forth herein, the Court finds that the Defendants motions should be granted and that the entire case should be transferred to the Eastern District of Kentucky pursuant to 28 U.S.C. § 1631 and 28 U.S.C. § 1404(a).

### A. Background

The facts as presented in the parties' affidavits do not appear to be in dispute. The Plaintiff, a cattle-ranch owner from Coalgate, Oklahoma, contracted with Arnett, an order buyer from Kentucky, for the purchase and shipment to Oklahoma of pregnant cattle located

in Kentucky.  From May, 2007 through January, 2008, Arnett purchased 169 head of cattle from a Blue Grass-owned livestock facility in Mt. Sterling, Kentucky.  All were certified pregnant by Dr. Bush, a Kentucky veterinarian employed by Blue Grass to conduct pregnancy checks on cattle put up for sale at the Mt. Sterling facility.  Arnett shipped the cattle to his own farm in Kentucky and co-mingled them with other cattle there.  When he eventually shipped cattle to the Plaintiff in Oklahoma, Arnett represented that 95 percent of the cattle came from Mt. Sterling and were certified pregnant by Dr. Bush.

Neither Blue Grass nor Dr. Bush knew that Arnett was an order buyer acting on behalf of the Plaintiff when he purchased the cattle at Mt. Sterling, or that he would be shipping the cattle outside the state.  Neither had direct business dealings with the Plaintiff or otherwise solicited or conducted any business in Oklahoma.  Neither Blue Grass nor Dr. Bush owns property in Oklahoma, and Dr. Bush is not licensed to practice here.  Arnett does not regularly transact business in Oklahoma, but he previously entered into contracts with the Plaintiff similar to the one in this case, *i. e.*, for the purchase and shipment to Oklahoma of cattle from auctions in Kentucky.  There is, however, no evidence that Arnett ever traveled to Oklahoma in connection with these contracts.

## B.  Analysis

The Plaintiff contends that all of the Defendants have sufficient minimum contacts with the State of Oklahoma to subject them to the exercise of personal jurisdiction by the Court.  *See, e. g., Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) ("The Due Process Clause permits the exercise of personal jurisdiction over

-2-

a nonresident defendant "'so long as there exist minimum contacts between the defendant and the forum State.'"), *quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). He argues in particular that Blue Grass and Dr. Bush should have known that out-of-state cattle buyers routinely purchased cattle from auctions in Kentucky through order buyers and that questions about quality would therefore arise outside the state, *i. e.*, that the injury suffered by the Plaintiff in Oklahoma due to the Defendants' actions in Kentucky was foreseeable. The Plaintiff also argues that Arnett subjected himself to suit in Oklahoma by contracting on several occasions to purchase cattle and ship them to Oklahoma. Arnett counters that the contract alone does not confer personal jurisdiction in Oklahoma and that this action does not arise out of or relate to any activities occurring within the state. Blue Grass and Dr. Bush argue that they are not subject to suit in Oklahoma because any contact they had with the state was associated solely with Arnett's "unilateral activity" in the state and was therefore so "random, fortuitous, or attenuated" that any exercise of personal jurisdiction by the Court would violate due process.

In a diversity case such as this, the plaintiff bears the burden of showing that the exercise of personal jurisdiction "'is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'" *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004), *cert. denied*, 544 U.S. 974 (2005), *quoting Soma Medical International v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). *See also id.* at 1074 ("'[T]he plaintiff has the burden of proving jurisdiction exists.'" ), *quoting Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th

Cir. 1995).  The questions are the same in Oklahoma, as personal jurisdiction is as broad as "the constitutional limitations imposed by the Due Process Clause."  *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990), *citing Rambo v. American Southern Insurance Co.*, 839 F.2d 1415, 1416-17 (10th Cir. 1988).  *See generally* 12 Okla. Stat. § 2004 F ("A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States.").  Further, "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington*, *Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945), *quoting Milliken v. Meyer,* 311 U.S. 457, 463 (1940).[1]

The Court finds that Blue Grass and Dr. Bush lacked sufficient contact with the State of Oklahoma to allow the exercise of personal jurisdiction.  Although part of a proper minimum contacts analysis, "'foreseeability' *alone* has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."  *World-Wide Volkswagen,* 444 U.S. at 295 [emphasis added].  *See also OMI Holdings*, 149 F.3d at 1094.  Aside from the mere

---

[1]      Two types of personal jurisdiction are consistent with due process: (i) specific jurisdiction, which arises where "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities," *OMI Holdings*, *Inc. v. Royal Insurance Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998), *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) [internal quotations omitted], and, (ii) general jurisdiction, which arises where the defendant maintains substantial general business contacts with the forum state.  *Id.*, *citing Helicopters Nacionales de Columbia v. Hall*, 466 U.S. 408 (1984).  As there is no indication that the Defendants maintained any general business contacts with the State of Oklahoma, *general* personal jurisdiction is not in issue herein.

possibility that cattle inspected by Dr. Bush and sold by Blue Grass to Arnett might wind up in Oklahoma, there is no evidence here that suggests that Blue Grass or Dr. Bush should reasonably have anticipated being "haled into court" in Oklahoma.  *See World-Wide Volkswagen*, 444 U.S. at 297 ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.") [citations omitted].  *See also TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1290 (10th Cir. 2007) ("Foreseeability that an event may occur over which a defendant has no control is distinct from foreseeability of litigation based on the defendant's own actions."), *citing World-Wide Volkswagen*, 444 U.S. at 297.  For example, neither Blue Grass nor Dr. Bush carry on any business activities, own property or solicit business in Oklahoma, or otherwise receive any benefits of Oklahoma law.  *See, e. g.*, *World-Wide Volkswagen*, 444 U.S. at 295 ("Petitioners carry on no activity whatsoever in Oklahoma.  They close no sales and perform no services there.  They avail themselves of none of the privileges and benefits of Oklahoma law.  They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State.  Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the  Oklahoma market.").  Further, the only relationship Blue Grass had with Arnett was as seller, and there was no relationship between Dr. Bush and Arnett; in particular, neither Blue Grass nor Dr. Bush had any interest in the contract between

the Plaintiff and Arnett.  *See*, *e. g.*, *International Shoe*, 326 U.S. at 316 ("[I]t is clear that unlike an individual its 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it.").  *See also Doe v. National Medical Services*, 974 F.2d 143, 145-46 (10th Cir. 1992) ("The contacts must be established by the defendant itself. . . . [I]t cannot be said that NMS purposefully directed its activities toward the state of Colorado.  The link with Colorado was based solely on the unilateral activity of Smith-Kline.  Smith-Kline's contacts with Colorado cannot be used to impose personal jurisdiction on NMS."), *citing Helicopters Nacionales de Columbia v. Hall*, 466 U.S. 408, 417 (1984).  Finally, even though Blue Grass and Dr. Bush may have profited from the sale of cattle to Arnett, any relationship with the Plaintiff arising therefrom would simply be too collateral for the Court to impose personal jurisdiction on those Defendants.  *See World-Wide Volkswagen*, 444 U.S. at 299 ("[F]inancial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State.  In our view, whatever marginal revenues petitioners may receive by virtue of the fact that their products are capable of use in Oklahoma is far too attenuated a contact to justify that State's exercise of *in personam* jurisdiction over them.").  *See also TH Agriculture & Nutrition, LLC*, 488 F.3d at 1290.  The Court therefore finds that it lacks personal jurisdiction over Blue Grass and Dr. Bush.

The Court does not, however, lack personal jurisdiction over Arnett.  Although the contract between the Plaintiff and Arnett would not itself establish the minimum contacts

necessary for assertion of personal jurisdiction by the Court, *see*, *e. g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *see also Benton*, 375 F.3d at 1077, what is relevant here is the overall relationship between the Plaintiff and Arnett. *See*, *e. g.*, *Burger King Corp.*, 471 U.S. at 479 ("It is these factors-prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing-that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."). Arnett contracted on more than one occasion to ship cattle to the Plaintiff in Oklahoma. *See*, *e. g*., *Benton*, 375 F.3d at 1077 ("By engaging in a business relationship with Mr. Benton, who operates his business from Colorado, Cameco 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"), *quoting Burger King*, 471 U.S. at 473 ("[W]ith respect to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities."); *see also Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005). Arnett thus "'purposefully avail[ed] himself] of the privilege of conducting activities [in Oklahoma],'" *see Benton*, 375 F.3d at 1076, *quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958), and thereby created a substantial connection with the state, out of which the Plaintiff's claims against him arose.

-7-

*See Burger King Corp.*, 471 U.S. at 475 ("Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State."), *quoting McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957).  *See also OMI Holdings, Inc.*, 149 F.3d at 1091 ("[W]e must determine whether the defendant purposefully directed its activities at residents of the forum and whether the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.") [internal citations and quotations omitted].  The Court therefore finds that it has personal jurisdiction over Arnett even though there is no indication he ever physically traveled to Oklahoma in connection with his business relationship with the Plaintiff.  *See Burger King Corp.*, 471 U.S. at 476 ("Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State. . . . So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."), *citing Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984).

Arnett urges the Court to transfer the case to the appropriate federal court in Kentucky pursuant to 28 U.S.C. § 1404 if dismissal is inappropriate.  Although Blue Grass and Dr. Bush have not asked for any relief other than dismissal, the Court could *sua sponte* transfer those Defendants to an appropriate federal court in Kentucky where the action could have been brought pursuant to 28 U.S.C. § 1631 instead of dismissing them from this action pursuant to Fed. R. Civ. P. 12(b)(2).  *See* 28 U.S.C. § 1631 ("Whenever [the] court finds that

-8-

there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . . and the action . . . shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred.").  On August 12, 2009, the Court convened a hearing on the pending motions and announced its findings regarding personal jurisdiction, *i. e.*, that jurisdiction was lacking as to Blue Grass and Dr. Bush but not as to Arnett.  All parties agreed that they preferred transferring the entire case to a court where it could be brought rather than dismissing Blue Grass and Dr. Bush and proceeding here with the Plaintiff's claims against Arnett.  Accordingly, the Court finds that in the interest of justice its discretion would be best exercised by transferring the entire case to the United States District Court for the Eastern District of Kentucky pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1631.[2]  *See William A. Smith Contracting Co., Inc. v. Travelers Indemnity Co.*, 467 F.2d 662, 664 (10th Cir. 1972) (noting that a transfer under section 1404(a) "is within the discretion of the trial court") [citations omitted].  *See also Trujillo v. Williams*, 465 F.3d 1210, 1222-23 (10th Cir. 2006) ("Although . . . § 1631 contain[s] the word 'shall,' we have interpreted the phrase 'if it is in the interest of justice' to grant the district court discretion in making a decision to

---

[2]     The Blue Grass facility where the Plaintiff's cattle were purchased at auction and Arnett's ranch are in Montgomery County, and Dr. Bush practices veterinary medicine in and around Bourbon County, Kentucky, both of which are in the Eastern District.  *See* 28 U.S.C. § 97(a).  The Court therefore finds that the appropriate federal court to which the case should be transferred is the United States District Court for the Eastern District of Kentucky.

transfer an action or instead to dismiss the action without prejudice."), *citing United States v. Botefuhr*, 309 F.3d 1263, 1274 n.8 (10th Cir. 2002).

### C.  Conclusion

In summary, the Court finds that it lacks personal jurisdiction over Defendants Blue Grass and Bush, but not Defendant Arnett.  The Court also finds that in the interest of justice the entire case should be transferred to the United States District Court for the Eastern District of Kentucky pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1631.  Consequently, IT IS HEREBY ORDERED that the Motion to Dismiss and Combined Brief in Support by Defendant Dawn Bush DVM, Incorrectly Named Donna Bush [Docket No. 21], the Motion to Dismiss and Brief in Support of Defendant Blue Grass  Stockyards East, L.L.C. [Docket No. 35], and the Motion to Dismiss, or in the Alternative Motion to Transfer, and Brief in Support of Defendant, William Arnett [Docket No. 49 & 50] are hereby GRANTED in part and DENIED in part, and that the above-styled case is hereby TRANSFERRED to the United States District Court for the Eastern District of Kentucky.

**IT IS SO ORDERED** this 1st day of September, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**